## Case No. 7,090.

### The ISAAC NEWTON.

[Abb. Adm. 588.] [1]

District Court, S. D. New York. Dec. 27, 1850.[2]

---

[1] [Reported by Abbott Brothers.]
[2] [Affirmed by circuit court. Case unreported.]

Mr. Moore, for libellants.
H. S. Dodge, for claimants.

BETTS, District Judge. The exceptions taken by both parties relate substantially to the allowance of $5,000 made by the commissioners to the claimants, because of the insufficient or defective construction of the boilers by the libellants; the one party contending it is too high, and the other that it is insufficient and short of the injury proved. To this point, it appears, the main attention of the commissioners was directed in taking proofs, and on the argument before them.

The testimony taken in court on the hearing was laid before them, some of the same witnesses were reëxamined by them, and additional ones were produced, to the end that this branch of the case might receive the most searching and detailed consideration.

Much of the evidence upon this point was necessarily hypothetical, and, as might be expected, widely variant in its suggestions and inferences. This difficulty was perceived and felt by the court on the hearing, and the reference in the case was directed chiefly in order to have facts of this character presented to men of practical experi-

ence, who could better appreciate the application and effect of the testimony than the court could hope to do, and whose judgment would be framed with higher advantages for accuracy than the court could expect to command on a hearing in its presence. The commissioners were selected with a view to their qualifications in respect to all matters which were to be brought before them. They have given, it seems, a full and patient hearing to the parties, and the result of their examination of the subjects is expressed in the report signed by them and on file. I do not feel that the argument on the exceptions has brought to my mind any well-grounded cause for disapproving that result.

The commissioners have not particularized the defects they discovered in the construction of the boilers, nor pointed out what changes they regarded as important to be made, nor designated the manner in which the sum of $5,000, allowed by them on account of the deficiency of the boilers, could be applied to their improvement or alteration so as to produce the amount of steam required by the contract. The order of reference did not enjoin upon them the duty of so doing.

Their attention was most carefully called to the point, on the part of the libellants, that the head of steam demanded, according to the decree, could be readily and certainly secured without any alteration of the boilers, and the witnesses gave in full their theories upon that hypothesis. Their estimates brought the expenses, for any useful changes which could be proposed, down as low as three or four hundred dollars for each boiler.

These theories and estimates were combated by testimony on the part of the claimants, who considered it must cost six or seven thousand dollars for each boiler, to place them in a condition to supply the steam demanded by this engine.

The exposition of the reasons upon which the decree was founded, shows that it was not contemplated by the court to adjudicate the point, that an alteration in the shape or size of the boilers must necessarily be made. The decree indicated distinctly the object to be attained, and which this engine and apparatus (including the boilers) have failed to accomplish, and the advice of competent officers or commissioners was invoked to determine what expense would be necessary to effect that object. Two of them are men of extensive experience in these matters, and their opinions, after hearing all the proofs, both as to the necessity of changes in the construction of the boilers, and the cost involved in such changes, must necessarily have great weight in determining the judgment of the court on the subject. The inquiry related solely to matters of fact and mechanical expediencies, and I should distrust any conclusions of my own

at variance with the judgment of the commissioners on such particulars.

Had these gentlemen sat with the court in the capacity of auditors, on the hearing, I should have deferred to their judgment on facts of a professional character, as justly entitled to control my own when not palpably in conflict with the testimony. And although in reperusing the proofs taken at the hearing, and reading over carefully that given before the commissioners, I might regard it as tending to prove that a much greater outlay would be required to place this engine in the condition stipulated for in the agreement, yet if I had possessed the advantage of a personal conference with them, their explanations of matters merely mechanical, might well have convinced me that my impression was erroneous, and that their opinion was most to be relied upon.

In cases of reference, out of court, to experts to ascertain and report upon facts appertaining to their calling or experience, it appears to be the settled rule of law to adopt their decision, unless there is a manifest preponderance of testimony against it. Doyle v. St. James' Church, 7 Wend. 178. Such is also the established usage with maritime courts in reviewing the decisions of inferior tribunals upon matters of fact.

There are various ways, in consonance with the evidence, in which material alterations may be made in the apparatus for generating steam, without an expense exceeding $5,000, and the judgment of the commissioners, whether these methods would be efficacious and sufficient, is more satisfactory to the court than its own opinion would be, not so aided, upon subjects so purely mechanical and professional.

The minor exceptions were not pressed on the argument, and I discover no cause for departing from the conclusions adopted by the commissioners in the allowances made by them to the parties respectively in these particulars.

The report is accordingly confirmed in all its parts.

The libellants insist they are entitled to interest upon the balance which the court may decree them, from the delivery of the vessel and engine to the claimants. The question of costs is also involved in the decree to be finally rendered.

On the 8th of October, at which time the libellants claim their contract was fully performed, they had been paid from time to time, as the work progressed, according to the provisions of the agreement, the sum of $35,000. The claimants contended, that if an interest account is raised, they are entitled to receive it on these advances. This claim manifestly cannot be supported. The advances were to be made before the claimants could have any possession or use of the work, and accordingly interest on those advances, or their present value in relation to the time of the completion of the

contract, must have entered into the contemplation of the parties, and be deemed adequately provided for in the terms or consideration upon which the work was to be done. In effect, the interest on these payments as respectively advanced, in addition to the price named, $46,000, would be the stipulated or contract price for the work and materials.

Had the claimants accepted the work on the 8th of October as a performance of the contract, there could be no question of the legal and equitable rights of the parties in respect to interest. It would become, from such delivery, a portion of the unpaid debt due the libellants, continuing to run with the debt until that was satisfied by the claimants. At least, interest would have run from the time the suit was commenced, which was only two days after, notwithstanding the contract was special. Feester v. Heath, 11 Wend. 478.

This is on the idea that the agreement is entirely fulfilled on the part of the libellants, and that they are justly entitled to the compensation stipulated; for, as a general rule, interest cannot be enforced on uncertain demands, or unliquidated damages, nor on damages demanded for non-performance of a contract. Willings v. Consequa [Case No. 17,766]; Buckmaster v. Grundy, 3 Gilman, 626; Speer v. Van Orden, 2 Penn. [3 N. J. Law] 652. Nor is interest allowed when more is demanded than is due. or upon uncertain demands which are to be settled by process of law. Doyle v. St. James' Church, 7 Wend. 178; Still v. Hall, 20 Wend. 51.

In this case, not only was the balance rightfully belonging to the libellants to be settled by process of law, but also a question vital to the right of recovery at all, was in contestation in the suit, with at least reasonable color of grounds of defence on the part of the claimants. They could not, accordingly, be justly required to recognize the demand or make any tender for its satisfaction until after the decree of the court had fixed the right of recovery, and the report of the commissioners had liquidated the amount.

It is true both parties dissent from the report, and by their exceptions appeal to the court to set it aside;—the libellants, because it awards them greatly less than their just dues, and the claimants, because it undervalues the damages they have sustained, and which were to be deducted from the contract indebtment. Still, according to the ordinary usage of courts, the report of referees must be regarded as liquidating the uncertain damages so far as to afford prima facie evidence that the libellants were entitled to that amount, and to put the claimants to the election of tendering its discharge, or afterwards litigating its recovery at the hazard of interest thereon.

I shall, therefore, allow interest on the balance of $6,347.40 so reported by the commissioners, at the rate of six per cent. per annum, from July 3, 1849, the day the report was filed in court, and thus became legal notice to the claimants. It is not made to appear upon any evidence before the court, that the very unusual delay in closing this case, which has intervened, since the decision upon the merits, is ascribable to any fault of the claimants, and accordingly interest will not be carried back further than the term the report was brought into court.

The libellants, as actors, had the efficient control of the cause, and might have speeded its decision at their option. Had their efforts to do so been thwarted by acts of the claimants, an equity might then have arisen to interest on the balance ultimately adjusted, during the period of such interception or procrastination of their suit. Here the delay was either their own or was acquiesced in by them; and affords no equitable ground for the allowance of interest during its continuance.

I discern in this case no principle distinguishing it from those to which the ordinary rule in respect to costs, applies; which is, that the successful party recovers with the amount in his favor, the costs which have accrued in prosecuting his right.

The case has been litigated in good faith, no doubt, on both sides. Had the demand been defeated in toto, full costs would have been awarded in favor of the claimants, and the converse of the principle is properly applied to them when their adversaries are the successful party.

The defence put in issue the right of the libellants to any compensation, or to maintain a suit upon the contract. They may be fairly held to take the advantages of a defence so comprehensive and entire, together with its hazards. If it succeeds, they stand discharged of the suit with their costs; and if it fails, the balance justly reclaimable from them should be paid with the taxable costs created in enforcing its collection.

Decree accordingly.